## White *against* Saint Guirons.

December, 1824.

Minor,
331
121   424

1, The seal of the Treasury Department of the United States, and the signature of the Secretary, are intrinsically evidence to authenticate the official acts of the Secretary.

2, The Acts of Congress, as published in the pamphlet Acts of the Session, may be read on the trial without proof that the pamphlet is authentic.

3, Trespass to recover possession may be maintained on a contract between the owner of the fee and the plaintiff, in which it is agreed that the plaintiff shall settle, and within three years make certain improvements on the land, and on performance of certain conditions shall have title in fee: and a stranger to the contract cannot resist the recovery of possession on the ground that the plaintiff has not performed or has forfeited its conditions.

4, In such action a right of entry and possession is sufficient, and it is not necessary to prove a previous possession in the plaintiff, nor an actual ouster.

5, The plaintiff may recover, though the defendant be in possession of less than is declared for.

6, In such action, damages for mesne profits, as well as the possession, may be recovered.

*ALEXANDER SAINT GUIRONS* declared against *Durrett White*, in the Circuit Court of *Greene* County, for that the defendant with force and arms entered the plaintiff's close, being section two of township twenty, in range from east (with the exception of the south-east quarter of said section,` more fully known and described in the allotment made among the individuals of the French Association, pursuant to the Act of Congress of the third of *March*, 1817, and the list thereof made and confirmed by the Secretary of the Treasury of the United States by number 261 ; and bounded, &c., and ejected and expelled said plaintiff therefrom, cut down and destroyed the timber, grass, &c., and kept said plaintiff out of possession thereof, from, &c., until, &c., and received the issues and profits from said premises during, &c., and other enormities, &c. General issue. On affidavit of plaintiff venue changed to *Tuskaloosa* County. Verdict for plaintiff, damages $564 48. Judgment for plaintiff, and writ of possession awarded.

On the trial, the defendant took two Bills of Exceptions.

First Bill of Exceptions. 1st, The plaintiff gave in evidence the contract between the Secretary of the Treasury of the United States, and *Charles Villar*, Agent of the late emigrants from France, who had associated for the purpose of forming a settlement in the United States, dated 8th of *January*, 1819 ; with five maps and a list of the allotments to said contract annexed, (said maps and list were on separate sheets of paper, and attached only by a ribbon fastening,) to which contract were the names of two subscribing witnesses, and the seal of the Treasury Department of the United States ; and proved by two witnesses acquainted with the seal, that they believed the seal annexed to be genuine. The plaintiff further proved that the signature of the Secretary of the Treasury on the first map was in his hand writing, and gave no other proof of the authenticity of the contract and maps.

2dly, The plaintiff read to the Jury as law an Act of Congress from the pamphlet Acts of the Session, to all which defendant objected ; and as to the contract, insisted that *Villar's* authority as Agent must be proved before it could be read in evidence. The Court overruled the objections and admitted the above evidence.

3dly, The defendant offered to prove that the plaintiff was not a French emigrant, and that there were many allotments in the townships mentioned in the contract, which had not been settled within the time prescribed by the contract ; to which evidence the plaintiff objected, and it was rejected.

Second Bill of Exceptions.

The only evidence of title given by the plaintiff was the contract, maps, and allotments, as mentioned in the first Bill of Exceptions. The defendant requested the Court to charge the Jury :

1, That if any title was conveyed by said contract with the plaintiff, it was only an equitable title ; that no estate vested in him unless an actual settlement had been made by him or for him within three years from the date of the contract, and in the manner therein prescribed. That the contract did not convey a sufficient title to authorize a verdict for the plaintiff.

2, That if a legal estate vested in any one on the execution of the contract, it vested in *Villar* alone ; and the plaintiff could not recover without having shewn title from him.

3, That the legal title did not pass out of the United States by the contract, and that therefore the plaintiff could not recover.

4, That without proof that plaintiff, or some one under him, had been in possession of the premises, and that he had been actually ousted by the defendant, or debarred an entry by him, the plaintiff was not entitled to recover.

5, That in this form of action the plaintiff could only recover possession of an estate for years, and could not try his title in such action without such an estate having been constituted in some one, and that the action must be by such lessee.

6, That if the Jury should believe that the defendant, at the time of instituting the action, was in possession of part only of the premises declared for, they must find for him.

7, That if the Jury should believe that at the time of the contract with the Secretary of the Treasury, the defendant had adverse possession, the right of entry could not pass to the plaintiff by the contract.

The Court refused to give any of the instructions prayed for.

It was proved that defendant was in possession of about forty-two acres in the south-west part of the south-west quarter of the section described. The price of rent was also proved, and evidence was introduced going to shew that plaintiff had demanded possession from defendant, &c.

*White* appealed to this Court, and assigned as Errors,
1st, 2d, and 7th, the matters in the Bills of Exceptions.
3d, 4th, 5th, and 6th assignments. There was a misjoinder in suing in the same action for the possession and for

White
v.
Saint Guirons.

mesne profits. The Jury found the defendant guilty of the trespass and ejectment, and assessed more than nominal damages. The Court rendered judgment, awarding the writ of possession, and for the damages, when the judgment should have been for possession and nominal damages merely.

*Clay* for the appellant, contended that a " *legal title*" was necessary to support this action; that by the evidence on the trial, no legal title, if any title whatever, in the plaintiff is shewn ; at most only a contract is exhibited for a title on the performance of several conditions precedent. It was not shewn that he performed these conditions or any one of them.

This action is instituted under the Statute of *December* 17, 1821, (Laws Ala. 483,) by which the fictitious proceedings in ejectment are abolished, and it is declared that the mode of trying titles to land shall be by the action of trespass. The rules applicable to ejectment, with the exception of the fiction, are to be applied to this action. A recovery in ejectment cannot be had on a mere equitable title in lessor of the plaintiff. The legal title to this land is yet in the United States ; and the plaintiff here has only a right to acquire a legal title in future upon the performance of conditions, and is not in a better situation than one who claims under a bond of, or contract with, him who has the estate in fee, where the title is to be conveyed when the purchase money shall be paid or the other conditions agreed on shall be performed. The cases are of the same description, excepting that in the contract under which the appellee claims, it is expressly declared that " no patent shall " be granted for any of the land aforesaid, nor shall any ti- " tle be obtained therefor, *either at law or in equity*, until " full and complete payment shall have been made," &c. It will hardly be contended that in the case supposed, an ejectment could be sustained on the bond for title merely, although the bond should not contain language so expressly restrictive as are the terms of this contract. In such a case the remedy must be sought in Chancery ; and here the appellee had not perfected his title so as to sustain an action at common law.

It was not proved that the appellee ever had actual possession. Lease, entry, and ouster were neither proved nor confessed. In ejectment it is always necessary to prove that the lessor of the plaintiff had a right to enter, by proving possession within the limited time in him, or in those under whom he claims. How can a trespass be committed on the possession of one who never had possession ? How

could he be ejected from lands on which he had never entered?

The Court rejected the evidence offered by the appellant to prove that the appellee was not a French emigrant.

The appellee claimed under the contract with the Secretary of the Treasury. The Secretary, on behalf of the United States, entered into the contract by virtue of the special and qualified power given to him by the Act of Congress "to set apart and dispose of certain public lands for " the encouragement of the cultivation of the vine and " olive ;" was authorized by the Act to contract for the sale of the land only with the " agent or agents of the late emi-" grants from France, who had associated together for the " purpose of forming a settlement in the United States." He was not authorized to contract, and could not make a valid contract · with or for the benefit of any other description of persons.

The Court rejected evidence going to shew that the conditions of the contract had not been performed, and in effect seems to have charged the Jury that the appellee had a right to recover, without proof of having done any act required by the contract to be performed on his part ; and that the contract, without regard to its conditions, vested the legal title in him. Yet the original Act of Congress declares that no title shall be obtained, either at law or in equity, until complete payment for the whole four townships, nor until the conditions of the contract shall be complied with ; and the supplementary Act goes no farther than to authorize a patent to any individual included in the contract, or to his heirs or devisees, when the conditions of settlement and cultivation proportioned to his interest in the land shall have been complied with. The contract recites, that whereas the President of the United States has designated and set apart four townships of land, under the provisions of the Act entitled, &c. ; and whereas *Charles Villar* hath produced satisfactory evidence that he is duly authorized, &c. by the proper number of emigrants, &c. He (the Secretary) contracts to sell to him and them the four townships, &c. upon the following conditions, &c.

1st, Within three years each allottee shall make an actual settlement on his allotment by himself, or others on his account.

2d, That within seven years there shall be planted at least one acre to each quarter section in vines, taken aggregately ; also five hundred olive trees on the grant.

3d, That within fourteen years there shall be cultivated at least ten acres of land to each quarter section, taken aggre-

gately, &c. ; and that upon the performance of the said con-ditions, and payment of two dollars per acre at the end of that time, patents shall issue to them or their assigns.

On the part of the grantees it is covenanted that they will duly perform said conditions, and pay for said land 184,320 dollars. Should not the appellee have been required to prove the performance of the conditions ? Should not the appellant have been permitted to prove that the conditions had not been performed ? In ejectment, the tenant against whom his landlord has brought the action, may shew that the landlord's title has expired, and that he has no right to turn him out of possession. So here the defendant in the action might prove that the plaintiff had not done that which was necessary to vest title in him, and to give him a right to turn the defendant out of possession. So in eject-ment it is sufficient for defendant to prove a title out of the lessor of the plaintiff ; or that his title is determined by its limitation, though he, the defendant, had no title in him-self.

I call the attention of the Court to the several matters stated in the Bills of Exceptions, on which I have not spe-cially commented, as they are sufficiently explicit of them-selves.

The verdict and judgment were not only for the posses-sion of the land, but also for damages for mesne profits, to the amount of $564 $\frac{48}{100}$. We contend that the Statute of 1821, to which we have referred, does not authorize both these causes of action to be determined in the same suit at common law. In ejectment the title or right of possession only is tried. It is not the proper action to recover mesne profits, nominal damages only are assessed. Where an ac-tion of ejectment and an action for trespass, assault and battery, were joined in the same writ, and there was a verdict for the plaintiff and entire damages assessed, the judgment was arrested because of a misjoinder. It seems then that at common law, the title to land, and any other cause of action, could not be tried in the same suit. It appears to be against the practice and policy of the common law, and calculated to produce incon-venience, hazard, and confusion, to blend and try in the same action matters of such different natures, and whose investigation may require evidence of such different descrip-tions. The question of title to real estate is too important to be tried in connexion with other questions ; the plaintiff comes prepared to litigate the title, which is often so com-plicated that the question of damages is lost sight of; the common law always seeks to simplify issues. Had it not been so considered, the question as to mesne profits could

as well have been tried in the old action of ejectment as in the action which the Statute has substituted for it. The Statute of 1821 is in derogation of the common law, and should be strictly construed. By the 1st Section, the fictitious proceedings in the action of ejectment are abolished, and it is enacted that the mode of trying title to lands, &c., " shall be by action of trespass, in which the plaintiff shall " endorse on his writ and copy writ that the action is brought " as well to try titles as to recover damages." The Section directs the mode of endorsement so as to give specific notice of the description of question to be tried—the nature of the damages to be recovered is undefined. It is not said that the damages in the action shall be recovered for the mesne profits. The action sounds in damages, and it may well be understood that only such damages were intended as are recovered in ejectment. This construction will accord with the principle which I contend ought to govern in giving effect to this Statute. The 2d Section is, however, conclusive on this point ; it provides, " that the *laws now in* " *force*, in relation to the action of ejectment, *except as far* " *as relates to fictitious proceedings therein*, shall *be applied* " *to the action of trespass*, to try *titles* as aforesaid." The Legislature then have substituted this for the action of ejectment, and except as to the fictitious proceedings, have declared that it shall be regulated by the same principles. Would this have been done had it been intended to enlarge the subject matter of the action and the judgment in so important a particular ? Had it been intended to give to this action a complexity not attending the action of ejectment, that it should be, not merely for the trial of titles, but for the investigation of all the circumstances necessary to be examined in an action for mesne profits, would it not have been so expressed in the Statute, and would it have been declared, as in the second Section, that the law of ejectment should be applied to this action ? The mesne profits are *not once mentioned in this* Statute, and its operation cannot by construction be extended to matter not mentioned ; to matter which, as we contend, is by the second Section expressly excluded.

Mr. *Clay* cited the following authorities in the course of his argument, viz. Runnington on Ejectment, 6, 15 to 18, 22, 23, 24, 109, 138, 234, 291, 444, 438. 2 Term Rep. 684. 4 Term Rep. 682. 3 Mass. R. 559. 1 Burr. 119. 6 vol. Laws U. S. 212, and the supplemental Act of 1822.

*Pickens* on the same side.—This action being brought under the Statute of 1821, we must examine what is its effect.

43

We contend that in abolishing the fictions in ejectment, it revives every principle of that action existing previous to the invention of the fiction. Before the adoption of the fiction, an actual lease, entry, and ouster, were indispensable to maintain the action. (3 Blkst. 198—200, 202, &c. Adams on Eject. 10, &c. 177.) This is proved from its being considered originally as an action of trespass in its nature. 3 Blk. 199, 200. Adams 6, 33, 34, n. 7, 145. And damages only having been originally recoverable in that action for the injury. 3 Blk. 119. Adams 7.

The plaintiff should have entered or done some act equivalent thereto, else he was not capable of receiving the injury. No demand was made, or, if any, not a legal one ; and if he can recover, he can receive redress where he could not have sustained an injury, for he never was in possession.

Again, *St. Guirons* declares as on a title in fee simple, without limitation ; but the action of ejectment is for the recovery of the possession of the term of a *lessee.* It is an improvement on the remedies by the old writ of *ejectione firmae* and of *quare ejecit infra terminum,* applicable only to the redress of lessees. 3 Blk. 198. 2 Esp. 1. Adams, 2 to 10. The plaintiff then cannot sustain this action by shewing title of a grade which could not have been tried in ejectment. There is an appropriate and different remedy adapted in each case to the nature of the title claimed by the plaintiff. If this is not correct, why in every instance before the Statute was the defendant required to confess a lease ? and why before the fiction, was the real plaintiff required actually to seal a lease to enable him to try his title ? because this action was given to lessees only, to recover their terms. If the fee was to be recovered, as appears in this declaration, the party had to resort to his writ of right.

It cannot be contended that the contract vested any title in the appellee, at least a title sufficient to support this action, when it is contrary to the express tenor of it. Can legal construction give a force to a contract beyond the import of words so expressly limiting it ? Can there be a legal title resulting from a contract which in nearly its last words emphatically says there shall be no title, either at law or in equity ? This is impossible. All legal title, or title available at law, is yet in the United States ; and there is no hardship in this. It is rather a benefit, for the Government has always the right to give possession in a summary way, being empowered by law to use military force to dispossess intruders.

If the contract conveys a legal title, it is on condition precedent, which, if not performed, may be taken advan-

tage of by him in possession; because it is the great fundamental maxim in ejectment, that *the plaintiff must recover on the strength of his own title, and not on the weakness of his adversary's.* It is therefore a sufficient defence to shew that the plaintiff has not performed a condition precedent, or in any other way that the title is out of him.

But if it be a condition subsequent, so as to require the grantor to do some act to determine the estate, yet does not this case form an exception? must the United States take any active step? or does not the maxim *nullum tempus* apply, so as to revest the title immediately on forfeiting the condition?

The Statute authorizing the holders of certain certificates to maintain an action, (Laws Ala. 248, sec. 8,) may be relied on. This would prove that even in those cases where every thing was consummated but the *formal* title, a recovery could not be had before the passage of this Statute. But it was intended only to apply to special cases of donation and pre-emption claims, which were referred to Commissioners to investigate, and determine, and to issue certificates. In those cases every right was vested before the certificate issued; all after was mere form. But admitting that this Statute did extend to cases of ordinary certificates to purchasers, those cases are not similar to this. In those certificates there is no expression restricting title, as in this contract; again, in the ordinary certificates, one condition, the payment of a fourth, has been performed. This gives a moral right; but in this case, at the time of contracting, nothing was done by one party; all was subsequent and might never be performed.

There was good reason for the Government to be thus cautious in this contract; by this they have it in their power *to resume possession in case of* non-compliance with either condition; and it was, perhaps, their policy to say the grantees should have no title, so as to put them at the hazard of every one in case of laches in the performance of the only condition beneficial to the Government—that of actual settlement.

Mr. *Pickens* cited, in addition to the authorities above mentioned, the following:
2 Term Rep. 749. 3 Blk. Comm. 203, 199. 5 Term R. 110, note 4. Burr. 2484. 8 Term Rep. 123, 178. 5 East. Rep. 134.

*Stewart* for the appellee.—It is said this action cannot be maintained on our title. By our Statute, as cited on the

other side, the action of trespass is substituted for eject-ment, and is made a possessory action to try the title to the occupancy of land. Was a fee simple necessary to sustain an ejectment? It would lie on the demise of a tenant for life or for years, or of any one having the right of entry and possession. Runn. 42, 12. 1 Chitty's Pl. 189. 3 Dallas, 457. 9 Johnson, 299. 1 Bay. 111 ; or of one hav-ing merely a license to inhabit for a consideration given, or an agreement for a lease, either of which have been held to amount to a lease. Runn. 24, 27. A mere naked pos-session in lessor of the plaintiff, if continued long enough to bar an entry, was sufficient without further proof of ti-tle. It is urged possession in us was indispensable ; but actual entry and possession (except the entry to avoid a fine) have never been deemed necessary to support an ejectment. Peake's Ev. 371, note o. Johns. Cases, 125. 1 Chitty Pl. 192. 3 Blk. 203, note 1 ; nor is an actual ouster by defendant necessary. See also 1 Term R. 741. Doug. 468. Whoever had a right of entry and of posses-sion might maintain ejectment.

The appellant concedes to us no right at all, but says, if we have any, they are such as can be asserted only in Chancery. If we had resorted to Chancery, the argument used would still apply with the same force, that " we should " have no title at law or in equity till the conditions were " performed," and we would have been told that our re-medy was at law ; for in the very first page of Running-ton's Treatise it is said, whatever be the title, the remedy is by ejectment ; and that Courts will go to the utmost extent to support this action, it being much favoured. The answer to the case put, of the obligee claiming under a bond for title, is this : that if by the bond or other evidence of con-tract with the owner of the fee, it was shewn that the ob-ligee had the present *right of possession*, he could recover it in ejectment, even against the obligor having the fee, though he could not sustain a writ of right.

But even if it were considered only as an equitable in-terest, then the United States would be considered as stand-ing seized to the use of the claimant or grantee, and it is provided by the Statute (Laws Ala. 247, Sec. 8,) that the possession shall in such cases, by the operation of that Statute, be transferred to the bargainee.

Did not the appellee acquire a right of entry and posses-sion by the contract with the Secretary of the Treasury ? The Government owned the fee simple, and could grant the whole, or carve any inferior estate out of it, either by Statute, by patent, or through a public functionary designat-

ed for the purpose, even without consideration. Here a grant has been made through a public functionary, who has acted strictly in accordance with the authority given him, and who " *contracts to sell*," &c. the lands, and stipulates for the granting of patents on compliance with conditions to be performed thereafter. Here are stipulations for a present estate absolute, of some kind and of some duration, and for a further and greater estate, future and contingent. By the supplemental Act of Congress, passed in *April*, 1822, the conditions of the contract as originally applicable to the Association generally, are to be applied to each emigrant separately, in proportion to his allotment of land ; *St. Guiron's* right is then to be viewed as between the Government and him individually. He undertakes to make a settlement on the land ; to plant a certain quantity of vines and olive trees within certain periods ; and after this done, to pay a sum of money at another period. And the Government, through the Secretary, appropriates the land for that purpose ; agrees to *sell it* to him that he may perform those conditions ; and if he does so, he shall receive a patent. Deeds are always to be construed, if possible, so as to give effect to the intention of the parties, and never to defeat it ; the intention is to be supported, even if the deed be defective, if by any construction it can be ; and the Courts will be liberal in such constructions, and are to construe most strongly in favour of the grantee and most strongly against the grantor. These are the great governing principles of construction of Deeds. · Runn. 8. 10. 24. 1 Mass. Rep. 227. It is then clear that the appellee acquired *eo instanti* a right to enter and take possession ; such was the intent of the parties. The very nature of the conditions required it : how could he perform conditions of settlement and cultivation if he had no right to enter and occupy the land ? By a contrary construction the Deed would defeat itself : entry then was permitted, and the license *being* for a valuable consideration given, became a right ; and we have seen that such a license is tantamount to a lease, which is a legal estate.

But it is said our estate is altogether on condition precedent, and that no title vests at law or in equity till all the conditions are performed ; that such is the express limitation in the contract.

An estate on condition precedent, is one where *no right vests at all* till the condition be performed.

An estate on condition subsequent, is one wherein an estate vests, but *may be* defeated by a non-performance. 2 Blk. 154.

Here we contend a right did pass to enter and occupy the lands at the moment of the execution of the contract ; all conditions whatever, then, must be subsequent to this right of entry. No condition at all is required to be performed for three years from the date of the contract. The conditions are such that possession is indispensable to perform them ; then there is a right to this possession unconditionally ; for would it not be absurd to say, " you shall " settle, clear, and cultivate this land, and yet you shall have " no right to enter and occupy it for this purpose ?" all the conditions are subsequent, for no distinction can be drawn between them ; there are conditions to be performed in three, seven, and fourteen years ; and if one is a condition precedent, all are. Although the first one might not be performed in fact, yet the allottee must be permitted to go on and perform the others ; for when called upon, he may shew a good excuse, (1 Bacon, 678) ; for instance, some act or fault of the grantor which would dispense with the performance of the first, and so on to the last. The grantor even could not re-enter after the first condition broken ; for there is here no clause of re-entry for his benefit ; and no words of " *limitation*," or " *condition in law*," can be found in this contract ; the conditions are simply " *conditions in deed*," 1 Bacon 638. 2 Bkl. 155. Then in fact a possessory estate did pass not subject to be defeated by non-performance of any condition for fourteen years, and the grantees have a right to the " *exclusive*" possession against the whole world, as alienees of the United States for that term. Not so as to the *fee ;* it is readily admitted that the fee was to vest on condition precedent. No title at all in the fee vests in *St. Guirons* till all the conditions shall be performed ; and it is as to this title that the words of restriction so much insisted on, and so much perverted, are used in the contract and Act of Congress, viz. " nor " shall any title be obtained therefor, either at law or in " equity, until full and complete payment," &c. This clause can apply to nothing else than the obtaining of patents, grants, or paper title. It was evidently intended by the restriction, that untill the performance of the conditions, no greater estate should be obtained than that already vested. The very words used, " nor *shall* any title be obtained," shew that the restriction applied to the future enlargement of the estate, and did not divest the right already vested. The object was to secure the Government, not to defeat the whole grant; neither could it defeat it ; for if any right passed by the previous part of the contract or grant, any after clause defeating it altogether, as this is pretended to

do, or imposing conditions impossible to be performed, would be inoperative and void as being repugnant, and would be rejected.  (Sheppard's Touch. 88.)

It is not denied that we must recover on the strength of our own title, and that we cannot rely on the weakness of our adversary's ; nor that if a *subsisting* title was shewn out of us, it would be sufficient to defeat our action.   But we claim "*under*" the title of the United States, in whom the fee resides, and not in opposition to it ; we hold a portion of that estate carved out to us, and, as I have endeavoured to shew, a right is vested *in praesenti* to the exclusive occupancy for fourteen years, equivalent to a leasehold estate for that time ; and a fee simple conditional, on condition precedent, to vest in *futuro.*   We then rely (to support our present estate, at least equal to a leasehold,) on the strength of the title of the United States, and a portion of it transferred to us sufficient to recover in ejectment. Is it shewn or pretended that the appellant has an adverse title overreaching that of the United States ?

It is again said that the appellant has a right to shew that our title is forfeited by non-performance, or any thing shewing our title to be at an end.   If our title was conditional, a stranger to the contract could not take advantage of it ; none but the grantor, or he entitled to the reversion, could. When an estate is on condition, and the condition not performed, the estate is not at an end ; it is not void, but only voidable.   It does not determine till the grantor make an entry, take advantage of the forfeiture, and avoid the grant. 1 Bacon, 638, 658, note *a.*   2 Blk. 155, 156.   3 Co. Litt. sec. 351, 218, *b.* (3.)   Here the grantor does no act to avoid, and does not wish to determine, the grant ; yet the appellant does.   Although we have the assent of the rightful owner to retain our estate, yet he contends this is unavailing as we have not his ; he, a mere intruder, claims the benefit of a forfeiture when the grantor claims none.   The Government *is not* exempted from the operation of this rule concerning forfeitures, which in truth is a benefit to the grantor, because it gives the grantor an election to determine the estate, or not, at his option.

The Court below did not err in rejecting the pretended evidence that *St. Guirons* was not a French emigrant. This enquiry was for the Secretary of the Treasury to make, whether he was within the operation of the Act of Congress or not ; and he has made it.   It was established to his satisfaction that he was—he has so expressly recognised *St. Guirons* in the contract, and has granted him an allotment as such.—He has contracted with *Villar* as his agent, and

*St. Guirons* acknowledged and now acknowledges *Villar's* authority. Even had the Secretary made the grant to an improper person, none but the Government, in a *direct issue,* could defeat it, by *scire facias* or other proceeding *ad hoc ;* the grant could not be impeached collaterally, nor by one not a party, as to whom it is conclusive—(12. Johnson, 81 to 84.) Besides, by the supplementary Act of 1822, each grantee is expressly *recognised* and *confirmed* in his allotment. And yet Mr. *White* assumes a supervising power in those matters, and calls on us to prove for his *satisfaction* what has long since been established and acknowledged by the only parties who could have any interest in the enquiry.

If the objections of the appellant to our title are available, and if it be true that we have no remedy in our Courts of justice, as seems to be contended, the amount of the argument would be this—that although the Government owning the fee, and having the power to dispose of the lands, had granted to the emigrants a right to go upon and settle them, and the grantees had acquired an incohate title, which they might perfect so as to vest the fee in them, and although the Government is satisfied with the progress of the settlement, and has received, besides the covenants of the grantees for settlement, an *independent and absolute covenant* for 184,320 dollars to be paid by the grantees, yet a mere intruder can interpose, and obstruct and defeat the whole object of the Government and stipulations of the parties, by withholding the possession of the premises and debarring the grantees from entering. For the appellant stands in the Record as a trespasser : he shews no title whatever ; The history of the country shews that all the lands in *Greene* County lately belonged to the United States : settlement on the public lands of the United States has been repeatedly prohibited by laws and proclamations. All the Acts of Congress authorising even licenses to settle have expired. We are told that the United States have the legal right, and they must exert it. How can they, when they have divested themselves of the right of possession and conveyed it to us ? They do not sustain the injury ; and can it be urged that the laws give us no remedy to recover our possession when wrongfully withheld ? It can be said with as much plausibility, that if in possession we would have no legal protection against unlawful eviction. That a person should be permitted to withhold land to which he has no right, thereby to prevent the rightful claimant from making settlement on it ; then to set up that very want of settlement as a forfeiture, and thus destroy the claimant's title by

means of his own trespass, and take advantage of his own wrong; would indeed be monstrous! Courts of Justice would badly perform their office if they sanctioned such doctrine, and the Congress of the United States, the Secretary of the Treasury, and the association of emigrants would indeed have employed their time very poorly in this business, for all their proceedings would have been nugatory.

Some other points are made by the first bill of Exceptions, which, though not argued, are relied on and referred to; a brief notice of them may not be improper.

The original contract was admitted in evidence. It was authenticated by the seal of the Treasury department of the United States. The seal was proved by two witnesses. This supplementary evidence was unnecessary and *ex abundanti*, the seal proved itself, and is of the highest grade of evidence. All are bound to know the public seals of the executive offices of our own Government, although it may be necessary to prove the seal of a private Corporation, (Phillip's Evid. 291. Gilbert's Evid. 11. 16. 18.) No one would contend that a Patent, under the seal of the General Land Office, is not evidence per se; yet that is only a *subordinate* office of the Treasury department. This contract is moreover recognised and recited in the Act of Congress of 1822. By another Act of Congress, passed in 1823, a copy of any Record of the Treasury department, certified under the seal of that department, is made evidence without being sworn to. If a copy is sufficiently authenticated by the seal, *a fortiori* the original must be.

The exception to the admissibility of the maps and list of allotments, because attached to the contract only with a ribbon, seems to me to be a refinement upon objections. The contract directly refers to a list, and to maps of certain townships, as being annexed. These maps are annexed, and in fact are a part of it, for it would be incomplete without them. The numbers of the townships in the maps correspond with those mentioned in the contract. The general map of the four townships granted, was attested by the signature of the Secretary of the Treasury; his hand-writing was proved, and the others are similarly attached and correspond with it. This was then, at least prima facie evidence.

There could be no Error in reading an Act of Congress in pamphlet form, and this Exception requires no answer. The Court was bound to know the law of the land.

As to the second bill of Exceptions, it may be said that most of the questions thereby raised, on which I have not already commented, appear as mere abstract questions, not

44

necessarily arising out of the proof ; and if so, the refusal of the Court to instruct the Jury as to them is not a fit subject of Exception.  17 Johns. Rep. 218 ; and the authorities there cited, where it is even held, that an *omission* to charge on any particular point is not within the reach of a bill of Exceptions.  The greater part of these objections, however, have already been answered ; no Error is seen in those that are not, and they also can be readily answered.

The 2d Exception is, that if the legal estate vested in any one, it was in *Villar*.  *Villar* contracted only as an *agent*, on behalf of himself and others.  The words of the contract are " sell to him and them ;" to whom ? the associates named in the list annexed ; again, " patents shall be " granted to the said individuals or their assigns for the " land to which they may be respectively entitled."  Besides, by the supplemental Act the contract was severed, and each grantee now holds in severalty.

The 4th Exception has been already answered.  The objection might be good if the law of trespass governed this action ; but it is to be governed by the law of ejectment stripped of its fiction, viz. confession of lease, entry, and ouster. . This is not an action for an injury to the possession, but for the recovery of it.  The true and only question in ejectment in modern days, says Lord *Mansfield*, is, " who has the possessory right ?"  2d Gould's Esp. 23.  Bay. 111.  Peake's Ev. 371.  1 John. Cases, 125.  The charge prayed for as to want of actual ouster was irrelevant.  A demand and refusal of possession were proved, and this amounts to an ouster.  Peake's Evid. 373, note.  1 Anthon, N. P. Cases, 80.

As to the 5th Exception : The lease is a part of the fiction, and the necessity of it is dispensed with by the Statute of 1821.  If the position of the appellant was true, he who had the fee would have no remedy for possession by this action ; for since the Statute of 1821, he cannot resort to a fiction ; then, to recover, he must seal a real lease, and grant away his estate ; and when his lessee recovered, if he was of bad faith and refused possession, he would be compelled to grant a new lease to another to recover of him ; and so on *ad infinitum.*  This would be rather an inconvenient remedy ; and if such is yet the law; what the Legislature have enacted in the Statute of 1821 is not the law, for it is in conflict with it.  As to this action being only for the recovery of an estate for years—those ancient notions are now entirely exploded.  Ejectment is the remedy in common use to recover possession on any title ; and it is

perfectly immaterial what is the lessor of plaintiff's estate, or its duration, if he be only entitled to present possession. This is not a writ of right, and the judgment is conclusive only as to the present right of possession ; and if his estate is only temporary, when it expires. A similar action will lie against him for the possession by any one who can shew a right to it.

The 6th Exception is, that if the defendant was in possession of part only of the tract declared for, the Jury should have found for him. It is well settled in ejectment, that the plaintiff may recover *less*, though not more, than he declares for. He recovers according to his proof. Under the writ of *Habere facias Possessionem* he takes possession at his peril, and is liable to any person injured if he takes more than his own. 2 Phillip's Ev. 171. If it were not so, a trespasser in possession might always prevent the plaintiff from coming on the land to measure and ascertain its metes, bounds, and quantity, and could always defeat the action for the want of that certainty, and succeed by his own wrong. It is for this reason that the tenant in possession must disclaim by plea, and by leave of the Court. The Statute (Laws of Alabama, page 463, sec. 14,) provides that no Error shall be assigned in any declaration in ejectment after issue joined on the title.

There can be no Error in the matter of the 7th Exception. The charge prayed for under that head would have been irrelevant. There was no evidence shewing that the defendant had *adverse* possession at the time of making the contract with the Secretary of the Treasury. He was a mere trespasser without colour of title. A possession to be adverse must be under a *title* set up in opposition to the plaintiff's, and defining the limits of the possession ; it must also have been adverse from its commencement. 12 Johns. R. 368. 9 Johns. R. 167, 179, 180. 16 Johns. R. 301. Peake's Ev. 380, U. 4 Johns. R. 202. Besides, such a charge here would have been contrary to law. This rule cannot operate against the Government, which is considered as being always in possession of its lands, de *jure* and de *facto*. The reason of the rule cannot apply : there could be no maintenance committed in buying the Government's titles. If a patent had issued, the defendant's possession, even if adverse, could not be a bar to the conveyance and to the patentee's recovery. It would be no answer to one claiming the fee, much less to one claiming and entitled to the possession under the United States, in whom the fee yet resides.

As to the alledged misjoinder, the subject of the 3d, 4th,

5th, and 6th assignments, admitting the principle that a strict construction is to be put on the Statute of 1821, substituting the action of trespass for that of ejectment, (which, however, might well be considered as a remedial Statute,) what is its operation on a strict construction? Trespass quare clausum fregit was, before the Statute, an action to recover damages; title was often, however, tried in it collaterally; but the judgment was not conclusive as to title; it was so for the damages only. By this Statute it is made so as to the right of possession as well as the damages. For this purpose the substantial part of the law of ejectment (which relates only to title,) is adopted and applied to this action. But no fiction is allowed; was not every thing nominal in it, fiction? were not, then, the nominal damages a fiction? then that part of the law of ejectment is not applied to this action. It is provided that the plaintiff shall endorse on his writ, and thereby give notice that the action is brought as well to try titles as to recover damages. In the third Section it is said, that if the plaintiff recover, he shall be entitled to an execution for possession as well as costs and damages. Now, damages for withholding possession necessarily followed the recovery in ejectment, though not in the same action, yet in *quasi* a part of the same proceedings; for the action of trespass for mesne profits was in the nature of a writ of enquiry, and was only to ascertain how much was to be given; the judgment in ejectment was conclusive between the parties that damages to some extent were due. And although trespass for mesne profits might be brought by the fictitious lessee, it was for the real plaintiff's benefit, for the nominal lessee could not release; his release would be set aside as a contempt. Now there is nothing in this Statute "restricting" a recovery of damages from what they really are down to a nominal amount; and this idea is expressly rebutted by the expressed intent to discard all fiction. Can any thing, in fact, be more plain than that it was the intent of the Legislature that the enquiry as to the real damages sustained, and the title, should all be tried in one action. Can any argument founded on *policy* prevail to counteract a positive enactment? But it is denied that such is the invariable rule of policy of the common law as contended for; how is it in detinue? Are not the title and damages enquired of there in the same action? There can be no doubt as to the true construction of the Statute; what are its terms? Sec. 1, " The action is brought as well to try titles as to recover damages." Sec. 3, " He shall be entitled to an execution for possession as well as for costs and damages." It would really be as

strange as absurd that the Legislature, in abolishing long established fictions, should establish a new one, and should say to the plaintiff in trespass, " you shall bring your action " to recover damages, and shall be entitled to an execution " for damages, but damages shall not mean damages, but " shall mean *Zero.*" To the general apprehension of all who convey and receive ideas by means of the English language, damages in judicial proceedings mean " an equivalent compensation in money for an injury sustained." The Statute, it is true, does not use the words "*mesne profits,*" nor were they used in the declaration and pleadings in the action of trespass, as usually brought before the Statute, for their recovery, (2 Ch. Pl. 388) ; but the declaration charged that the defendant took and received the issues and profits, during the time he kept possession from the plaintiff: and so we have charged here, and so the Jury by their verdict have found.

In addition to the authorities cited in the course of the argument by Mr. *Stewart*, the following were referred to : 10 Johns. R. 338. Runnington on Eject. 38 to 41, 14, 27. 3 Term R. 462. 1 Bacon's Abr. 640. T. Raymd. 404. 2 Term R. 145. Show. 120, 122. Caine's R. 168.—

JUDGE *Saffold* delivered the opinion of the Court.

By the first bill of Exceptions, questions are raised as to the competency of evidence received on behalf of the plaintiff, and other evidence offered by the defendant and rejected.

The contract given in evidence appears to have been signed by the Secretary of the Treasury of the U. States, and authenticated by the public seal of that department. Such authentication, without any extrinsic aid, is sufficient; The Treasury department, being an important public office of the Government, the official acts of the Secretary are to be recognised with full faith and credit in our Courts. If aid, however, could be conceived necessary, the seal and the signature were proved by witnesses. As to the maps and list of allotments, direct reference is made to them in the contract, and they were a necessary part of it. Under the circumstances they were properly admitted.

The Judge was bound *ex officio* to know the Act of Congress, and there could be no Error in hearing it read from the phamphlet in which the Acts of the Session were published.

From an examination of the Acts of Congress under which the appellee claims, and which were cited in argument.—The " Act to set apart and dispose of certain public

"lands for the encouragement of the cultivation of the vine "and olive," and the Act supplemental thereto, it appears that the Secretary of the Treasury was vested with the sole and exclusive power of ascertaining the authority of the agent of the association ; and that the Secretary and this agent were to decide what persons came within the description of French Emigrants as named in the Act, and to make allotments among them. The contract and maps, &c. annexed shew that the allotments were so made, and to whom, and it is conclusive as to those facts. Moreover, the supplemental Act expressly recognises *Villar* as the agent, and confirms and severs the rights of the individuals.

If the conditions as to any other allotment than that of the appellee had not been performed, such failure could not affect his rights. Whether he had failed in the performance of the conditions as to his own allotment, was a question exclusively between him and the other party to the contract. The Government might claim for a failure to perform the conditions, but a stranger to the contract has no right to intermeddle.

The second bill of Exceptions is as to the instructions which the defendant on the trial moved the Court to give to the Jury, and which the Court refused to give.

By the Act of Congress, and the express terms of the contract, the four townships of land were appropriated to the use of the association of French emigrants. A sale was agreed on, and the price and terms fixed. Within three years a settlement was to be made by each individual on his allotment. Within seven years certain vegetable productions were to be planted and cultivated, and within 14 years certain other conditions were required to be performed ; and then, upon the payment of two dollars per acre, patents were to issue. It was agreed that the emigrants should not have a complete title, at law or in equity, until by a performance on their part they should be entitled to Patents.

The immediate possession of the premises was a vital right, and was indispensable to the allottees to enable them to comply with their engagements with the Government. They acquired therefore, substantially by the spirit and actual stipulations of the contract, a right to enter, take, and retain possession of the lands for a limited time, absolutely, and against the rest of the world. This right of possession vested immediately, and without any condition, for a term of years yet unexpired. They acquired also a right to the fee simple, to vest *in futuro*, on performance of conditions precedent.

This form of action has been substituted in this State for

the common law action of ejectment, to try title to lands. A fee simple, was not necessary to sustain an ejectment. A tenant for years or for life, without expectation of the fee, could maintain it, and recover possession if withheld from him. In no view of the case can the appellee's estate be considered inferior to a lease for years. He has a present right (under the United States, in whom the fee resides,) of *entry* and *possession*, and that is sufficient, he is therefore entitled to the benefit of, and can maintain this action.

It is objected that no interest was acquired by the appellee, unless he made an actual settlement on his allotment within 3 years. The right passed by the grant remain unimpaired until the Gevernment shall in some way determine, or rescind the contract, or at least, until the expiration of the time allowed for its fulfilment ; and, as before stated, this was a matter in which a stranger had no concern.

The objection that if a legal title vested in any one, it was in *Villar* only, is not well taken. He was an agent—the allotments were made individually, the titles of the allottees were severed by the supplementary Act, (if not without it.) So that no one but the individual to whom the allotment was assigned, could demand possession of it.

The objection that the plaintiff could not recover unless he had previously been in possession, and was ousted or debarred an entry, is not available. Upon the principles and for the reasons already stated, neither is deemed to have been necessary. The fictions of *Lease, entry,* and *ouster* have no application to this form of action.

It remains to be examined if there was a misjoinder of causes of action, or error in rendering judgment as well for the *mesne profits* as for the possession of the land.

The recovery of damages to the extent of the mesne profits is an appropriate object of the action of trespass. The *Statute of 1821* abolishes the fictitious proceedings in ejectment, directs that the mode of trying title to land, &c., shall be by action of trespass in which the plaintiff shall endorse on his writ that the action is brought as well to try titles as to recover damages ; and that if the plaintiff shall recover, he shall be entitled to an execution for possession as well as for costs and damages. To suppose that in extending the remedy by this form of action to the recovery of possession as well as damages, and that by the terms used in the Statute the Legislature intended to divest the action of trespass of any of its legitimate properties, would involve palpable inconsistency. The effect of such con-

DECEMBER, 1824.
struction would be a partial redress to the plaintiff by the first judgment, and a second action immediately afterwards, and of the same nature to recover the residue.

White
v.
Saint Guirons.

Formerly, where a party was deprived or debarred the possession of his lands, his remedy was attended with unnecessary inconvenience and delay. By his action of ejectment, with all its troublesome legal fictions, he might recover possession of the premises and nominal damages merely, and then had to resort to his action of trespass for the recovery of the mesne profits, also under the name of damages ; and in the last action the judgment in the first was an essential, and indeed the chief matter of his evidence. The experience of the inconvenience of this mode of proceeding appears to have produced the Statute of 1821, and to this Statute such a construction should be given as will tend to suppress the mischief and advance the remedy ; and indeed it would seem to be absurd, that in an action of trespass brought under this Statute, divested of all legal fiction, and charging an injury of magnitude, the recovery as to damages (whatever might be the evidence) should be limited to a nominal amount merely.

It is the unanimous opinion of the court that the Judgment be affirmed.

Judge *Gayle* not sitting.